UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-cv-22558-DPG

**New National, LLC,**
**a Florida limited liability company**,

    Plaintiff,

v.

**City of Miami Beach, a municipal**
**corporation of the State of Florida**,

    Defendant.
_____/

# ORDER[1]

**THIS CAUSE** comes before the Court upon Defendant City of Miami Beach's (the "City") Motion to Dismiss the Plaintiff's Complaint (the "Motion"). [ECF No. 23]. On September 30, 2025, the Court held a hearing on the Motion. [ECF Nos. 74, 83]. Having considered the record and argument from counsel, the Motion is **GRANTED** for the reasons that follow.

## BACKGROUND

Miami Beach's Historic Preservation Board (the "HPB") is a quasi-judicial board tasked with, among other responsibilities, deciding whether to issue Certificates of Appropriateness ("COA(s)") for construction within the City's designated historic areas. COAs are required for exterior alterations, additions, or demolitions within designated historic areas, including the City's Art Deco District (the "District"). This action stems from the HPB's decision to approve the construction of a modern, 15-story building (the "Tower") in the District. Plaintiff New National,

---

[1] This Order supersedes the Court's Paperless Order granting Defendant's Motion to Dismiss, which stated that a detailed written order would follow. *See* [ECF No. 134].

1

LLC ("New National" or "Plaintiff"), which owns the National Hotel within the District, filed this lawsuit against the City to reverse the HPB's decision.

The HPB rejected plans for construction of the Tower three times. However, after a hearing on October 10, 2023, the HPB issued a COA approving the Tower's construction.[2] Plaintiff contends that the HPB only issued the COA after the City and the Tower's developers made a *quid pro quo* deal such that the developers would fund improvements to Lincoln Road (located within the City) in exchange for the HPB approving the Tower's construction.[3] Plaintiff alleges that construction of the Tower will irreparably harm the charm of the District, in general, and the National Hotel, in particular.

On November 2, 2023, Plaintiff petitioned the Special Magistrate for the City to review the HPB's approval. After extensive briefing and oral arguments from the parties, the Special Magistrate affirmed the HPB's decision on February 5, 2024. On March 6, 2024, Plaintiff appealed the Special Magistrate's decision to the Appellate Division of Florida's Eleventh Judicial Circuit (the "Circuit Court"). The Circuit Court affirmed the Special Magistrate's decision, finding that Plaintiff was afforded due process and that the HPB's decision to grant the COA was supported by competent substantial evidence. On January 2, 2025, Plaintiff filed a Petition for Writ of Certiorari with Florida's Third District Court of Appeal ("Third DCA"), which denied Plaintiff's Petition on March 5, 2025. Plaintiff did not raise the *quid pro quo* issue before the Special Magistrate, the Circuit Court, or the Third DCA.[4]

---

[2] Plaintiff alleges that this hearing was closed to public comment and that the National Hotel objected to that as improper. [ECF No. 1 ¶¶ 61- 62].

[3] Plaintiff's Response states the "the claims before this Court challenge the City's conduct stemming from the City Commission's adoption of Resolution 2022-32444." [ECF No. 55 at 14]. While the Complaint does not specifically mention Resolution 2022-32444, Plaintiff appears to assert that the Resolution was a part of the City's *quid pro quo* deal with developers. *See, e.g.,* [ECF No. 1 ¶ 43]. According to Plaintiff, the City passed Resolution 2022-32444 on December 14, 2022, [ECF No. 55 at 1-2], ten months before the HPB issued the COA.

[4] In the Response, Plaintiff argues that "[t]he appeal before the Special Master focused narrowly and specifically on the National's right to cross-examine witnesses during the HPB's hearings." [ECF No. 55 at 14]. In the Complaint,

On June 4, 2025, Plaintiff filed the Complaint [ECF No. 1], alleging violations of 42 U.S.C. § 1983 for constitutionally inadequate process (Count I) and substantive due process (Count II). Plaintiff also seeks a declaratory judgment for violations of Article I, Section 9, of the Florida Constitution on procedural due process (Count III) and substantive due process (Count IV) grounds. Finally, Plaintiff alleges a constitutional equal protection violation (Count V). In its Motion, the City argues that the Court lacks subject matter jurisdiction because (1) Plaintiff lacks Article III standing and (2) the *Rooker-Feldman* doctrine requires dismissal. The City also argues that Plaintiff fails to adequately state its claims.

## LEGAL STANDARD

A motion to dismiss for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), may present either a facial or a factual challenge to the complaint. *See McElmurray v. Consol. Gov't*, 501 F.3d 1244, 1251 (11th Cir. 2007). In a facial challenge, a court is required only to determine if the plaintiff has "sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* (internal quotation omitted). By contrast, a factual attack "challenge[s] the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings . . . are considered." *Id.* In a factual attack, "no presumptive truthfulness attaches to [a] plaintiff's allegations," *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990), and the plaintiff bears the burden to prove the facts sufficient to establish subject matter jurisdiction. *See OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002).

---

Plaintiff alleges that "the National petitioned the Special Magistrate for the City to review the HPB's Approval on two grounds. First, the National argued that the HPB failed to consider the Standards and Guidelines as required by the Resiliency Code in rendering its decision. Second, the National asserted it was deprived of due process when the Board denied the National's numerous requests to cross-examine the Ritz/Sagamore's witnesses." [ECF No. 1 ¶ 72].

The City has advanced both factual and facial attacks. In its facial attack, the City argues that Plaintiff fails to allege an injury in fact and, as such, lacks standing. In its factual attack, the City argues that this Court lacks subject matter jurisdiction pursuant to the *Rooker–Feldman* doctrine. *See, e.g.*, *Christophe v. Morris*, 198 F. App'x. 818 (11th Cir. 2006) (per curiam) (affirming a district court's decision to dismiss the plaintiff's complaint where the district court had considered *Rooker–Feldman* as a factual attack on its subject matter jurisdiction).

## DISCUSSION

### I. Standing

"Article III of the Constitution limits federal courts to deciding 'Cases' or 'Controversies.'" *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020) (en banc) (citing U.S. Const. art. III, § 2). The doctrines of standing, ripeness, and mootness govern whether an action presents an actual case or controversy. *Id.* Standing "is a threshold question that must be explored at the outset of any case." *Corbett v. Transp. Sec. Admin.*, 930 F.3d 1225, 1232 (11th Cir. 2019). It is not a "mere pleading requirement[ ] but rather an indispensable part of the plaintiff's case . . . ." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

To establish Article III standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan*, 504 U.S. at 560–61). The "irreducible constitutional minimum of standing" requires an "injury in fact" which is "an invasion of a legally protected interest" that is both "concrete and particularized," and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal citations omitted).

Here, Plaintiff argues that it was injured by the City, both economically and by a lack of fair process. As to its economic injuries, Plaintiff alleges that the building of the Tower will lead to a diminution in the National Hotel's property value and that fewer tourists will come to the District. The City argues that Plaintiff lacks standing because its alleged economic injuries are purely conjectural, hypothetical, and speculative, not concrete or particularized. The Court agrees. Plaintiff has not sufficiently alleged how it has or will be harmed by the Tower or why the Tower will destroy the Art Deco nature of the District and drive tourists and guests away from the District. Without more detail, Plaintiff's economic claims are too speculative/conjectural to show any injury in fact.[5]

Plaintiff's fair process claims fare no better. Plaintiff argues that there was an illegal *quid pro quo* deal between the City and developers to make improvements to Lincoln Road in exchange for HPB's issuance of the COA. However, Plaintiff's primary evidence of such an agreement is the City's Resolution No. 2022-3244, done ten months before the HPB's issuance of the COA, and statements by HPB board members that "we're not supposed to talk about the investment on Lincoln Road being a *quid pro quo* for everything" and "the [Project] should stand on its own two legs . . . ." [ECF No. 1 ¶ 67]. Plaintiff also alleges that "[t]his improper *quid pro quo* scenario caused the HPB to act arbitrarily and capriciously by approving the Ritz/Sagamore proposal which violates both the substantive and procedural rights of all who are impacted by the HPB's Approval, including particularly the National and all citizens of Miami Beach." [ECF No. 1 ¶ 49].

"[A] mere recitation that the Government is violating one's constitutional rights is not concrete enough to establish standing." *See Ladies Mem'l Ass'n, Inc. v. City of Pensacola, Fla.*,

---

[5] Plaintiff's reference to *Sierra Club v. Morton*, 405 U.S. 707, 734 (1972) is unavailing. *Sierra Club* discusses an injury in fact for standing under § 10 of the Administrative Procedure Act, not Article III standing. *Id*. Even if the *Sierra Club* analysis applies here, and "[a]esthetic and environmental well-being" can be an injury in fact for the purposes of Article III standing, *id.*, the harm alleged here is too conjectural to constitute an injury in fact.

34 F.4th 988, 993 (11th Cir. 2022); *Gardner v. Mutz*, 962 F.3d 1329, 1341 (11th Cir. 2020) (finding Plaintiff's alleged injuries are too abstract for Article III standing, as "surely the naked recitation of a constitutional claim isn't sufficient; if it were, every § 1983 plaintiff would, by definition, have standing to sue."). Here, the Court finds that Plaintiff's alleged constitutional deprivations, including the alleged *quid pro quo* scheme, are too abstract to establish an injury in fact. Plaintiff does not allege specific evidence tying the HPB's COA to the developers' funding of improvements to Lincoln Road; nor does Plaintiff explain why such an agreement would be unlawful. Further, Plaintiff does not sufficiently explain how the HPB's actions are arbitrary and capricious or how the City's actions are traceable to any actual or imminent harm to Plaintiff.

Plaintiff also alleges that the City violated its equal protection rights, including its "right to a formal impartial review process before an owner or developer modifies an existing building or constructs a new building within the District." [ECF No. 1 ¶ 132]. While Plaintiff alleges that "the State of Florida created a right for the members in protected districts to be shielded from modern development," *id*. ¶ 133, Plaintiff recognizes that the HPB had the authority to grant a COA so long as its decision was not arbitrary and capricious. At bottom, Plaintiff alleges that it was denied equal protection because the HPB was not impartial, it failed to follow a uniform set of standards, and there was no rational basis for its decision. *Id*. ¶¶ 134–136. These allegations are also too conjectural and abstract for standing. As noted above, Plaintiff does not allege specific evidence of bias or a connection between the HPB's COA and the developers' funding of improvements to Lincoln Road. Nor does Plaintiff explain why the HPB's approval of the COA, after a few modifications to the application, is evidence that the HPB ignored its regular standards or that its decision was arbitrary and capricious. Because Plaintiff fails to sufficiently establish Article III standing, the Complaint shall be dismissed.

## II. Rooker-Feldman

The City also argues that this case should be dismissed pursuant to the *Rooker-Feldman* doctrine. "The *Rooker–Feldman* doctrine makes clear that federal district courts cannot review state court final judgments because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court." *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) (per curiam). The doctrine, named for *Rooker v. Fidelity Trust Company*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The doctrine bars federal claims previously adjudicated in the state court that are "inextricably intertwined" with the state court's judgment. *See Feldman*, 460 U.S. at 482 n.16. "A claim is inextricably intertwined if it would effectively nullify the state court judgment, or it succeeds only to the extent that the state court wrongly decided the issues." *Casale*, 558 F.3d at 1260 (internal quotation marks and citations omitted).

Plaintiff argues that *Rooker-Feldman* should not apply here because the alleged *quid pro quo* arrangement was not addressed in the state court proceedings because of the Special Magistrate's limited review. Plaintiff alleges that the Special Magistrate's findings were limited to whether the HPB "failed to consider the Standards and Guidelines as required by the Resiliency Code in rendering its decision," and that it was "deprived of due process when the Board denied the National's numerous requests to cross-examine the Ritz/Sagamore's witnesses." [ECF No. 1 ¶ 72]. According to Plaintiff, its procedural due process claims "are inherently outside the scope of

7

the HPB" because the claim stems from the City's adoption of a resolution (to improve Lincoln Road) prior to the COA's issuance as part of the *quid pro quo* scheme. [ECF No. 55 at 14–15].

The Court finds that Plaintiff's federal claims are barred by *Rooker-Feldman* because they are inextricably intertwined with the state court judgment. To rule in Plaintiff's favor and find that the HPB's approval process was flawed, this Court must find that the HPB lacked competent substantial evidence to issue the COA. Such a finding would conflict with the state courts' findings that the HPB had competent substantial evidence to issue the COA.[6] A determination that the state courts "wrongly decided the issues" is prohibited by the *Rooker–Feldman* doctrine. *Casale*, 558 F.3d at 1260; *see also Edgewater House Condo. Ass'n v. City of Fort Lauderdale, Fla.*, 825 F. App'x 658, 662-64 (11th Cir. 2020) ("Because the Broward County Circuit Court previously held that the Commission had competent and substantial evidence to deny [the plaintiff]'s application, the district court properly held that [the plaintiff] was collaterally estopped from bringing its equal protection claim.").

Plaintiff has not adequately explained why it did not raise these *quid pro quo* issues at any stage of the state court proceedings. Plaintiff states that the City passed Resolution 2022-32444 to fund improvements on Lincoln Road on December 14, 2022, [ECF No. 55 at 1-2], ten months prior to the HPB's issuance of the COA. If Plaintiff was aware of the Resolution and any *quid pro quo* scheme, those issues should have been raised before the Special Magistrate, the Circuit Court, and the Third DCA. Plaintiff's failure to do so does not give it a second opportunity in federal court. *See Casale v. Tillman,* 558 F.3d 1258, 1261 (11th Cir. 2009) (finding the district court lacked jurisdiction under *Rooker-Feldman* and reasoning, "[w]e are not a clearinghouse

---

[6] The Complaint alleges that the Circuit Court found that "the HPB's decision to grant the Ritz/Sagamore's COA was supported by competent substantial evidence and complied with the essential requirement of law." [ECF No. 1 ¶ 75]. Plaintiff also acknowledges that a party can appeal an HPB decision if the HPB failed to "base its decision on substantial competent evidence." [ECF No. 55 at 11].

for Casale's overstock arguments; if he did not offer them to the state courts—or if the state courts did not buy them—he cannot unload them by attempting to sell them to us."); *Powell v. Powell*, 80 F.3d 464, 467 (11th Cir. 1996) (rejecting Plaintiff's argument that *Rooker-Feldman* does not apply because he did not have a reasonable opportunity to bring his claim in the state court proceeding, noting "[t]here is no reason that he could not have challenged the constitutionality . . . as applied to him in the state court proceeding."); *Edgewater,* 825 F. App'x, at 663-64 (affirming the district court's finding that "Edgewater and the City had a full and fair opportunity to litigate whether the Commission had sufficient basis to deny Edgewater's application" despite Edgewater's argument that it never litigated its equal protection claim). Indeed, if the state courts' review was as limited as Plaintiff argues, the state courts would have said so. Therefore, the Complaint shall also be dismissed pursuant to the *Rooker-Feldman* doctrine.[7]

## CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant City of Miami Beach's Motion to Dismiss, [ECF No. 23], is **GRANTED**.

2. Plaintiff's Complaint, [ECF No. 1], is **DISMISSED without prejudice**.

3. This action is **CLOSED**, and all pending motions are **DENIED as moot**.

**DONE AND ORDERED** at Miami, Florida, this 6th day of February, 2026.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

---

[7] Because the Court finds this case should be dismissed for lack of subject matter jurisdiction, it need not consider Defendant's arguments to dismiss the Complaint on 12(b)(6) grounds.